1  Marina Lang, Cal. Bar No. 251,087 mlang@socalip.com
2  Michael D. Harris, No. 59,470 mharris@socalip.com
   Brian S. Tamsut, No. 322,780 btamsut@socalip.com
3  SOCAL IP LAW GROUP LLP
4  310 North Westlake Blvd., Suite 120
   Westlake Village, CA 91362-3788
5  Phone: (805) 230-1350 • Fax: (805)-230-1355
6  Attorneys for Plaintiff Outer Aisle Gourmet LLC

7

8                           UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| Outer Aisle Gourmet, LLC, | No. 2:21-cv-02599 |
|---|---|
| Plaintiff, | Complaint for (1) Unfair Competition, Trade Libel/Product Disparagement [15 U.S.C. § 1125(a)], (2) Declaratory Judgment of Trademark Non-infringement, (3) Cancelation of Defendant's Sandwich Thins Trademark [15 U.S.C. § 1119] |
| v. | |
| Bimbo Bakeries USA, Inc., Arnold Sales Company, LLC and Does 1–10, | |
| Defendant. | Jury Trial Demanded |

16    For plaintiff Outer Aisle Gourmet, LLC's ("Outer Aisle" or "Plaintiff") com-
17 plaint against defendants Bimbo Bakeries USA, Inc. ("Bimbo"), Arnold Sales Com-
18 pany, LLC ("Arnold"), and Does 1–10, Outer Aisle alleges, on information and be-
19 lief:

20           **FIRST CLAIM FOR RELIEF – UNFAIR COMPETITION UNDER**
21                           **FEDERAL LAW [15 U.S.C. § 1125(a)]**
22                               **SUBJECT MATTER JURISDICTION**

23    1.  This action arises under the laws of the Lanham Act § 43(a), 15 U.S.C.
24 § 1125(a) for unfair competition, and under 5 U.S.C. § 1119 to cancel the defendants'
25 "sandwich thins" trademark registration.
26    2.  This court has subject matter jurisdiction under 28 U.S.C. § 1338(a).

27

28

**THE PARTIES, PERSONAL JURISDICTION AND VENUE**

3. Plaintiff Outer Aisle's products are made in this District in Santa Barbara, CA, and they are a Delaware limited liability company with a principal place of business at 2879 Seaborg Ave., Suite 102, Ventura, CA 93003.

4. Defendant Bimbo is a Delaware corporation that does business throughout the United States including doing business as Bimbo Bakeries USA, which has a facility at 4030 Temple City Blvd., Rosemead, CA 91770, in this district.

5. Defendant Arnold is a Delaware corporation which does business throughout the United States including doing business as Bimbo Bakeries USA, which has a facility at 4030 Temple City Blvd., Rosemead, CA 91770, in this district.

6. Outer Aisle does not know the true names and capacities, whether individual, corporate, associate or otherwise of defendants Does 1–10. Therefore, they are sued by these fictitious names. Outer Aisle will amend this pleading when the true names and capacities have been ascertained.

7. Does 1–10 do business in the United States and in this district.

8. Bimbo, Arnold and Does 1–10 are "Defendants" in this complaint.

9. All Defendants are subject to personal jurisdiction in this Court under Cal. Code Civ. Proc. § 410.10. and FED. R. CIV. P. 4 because each has a permanent place of business in California and this district, and each does business in California and this district.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b), because each Defendant is a corporate entity subject to personal jurisdiction in this district.

**FACTS**

**OUTER AISLE**

11. Since 2013, Outer Aisle has been innovating revolutionary food products that are plant-based, grain free, gluten free, and born from fresh and simple ingredients. Their plant-based products provide nutrient-dense alternatives to bread, which are sold throughout the United States online such as via Amazon, in major grocery

1 stores like Whole Foods and Ralphs, and at warehouses like Costco. The company is committed to health and aims to create delicious, plant-based versions of America's favorite foods, but without the sugar, processed carbohydrates, or artificial ingredients.

12. Outer Aisle's hard-earned reputation stems from being the original maker of Cauliflower-based sandwich thins as a bread substitute. Outer Aisle first sold its Cauliflower-based SANDWHICH THINS in 2014 and has not stopped since. The below photographs show examples of Outer-Aisle's Cauliflower SANDWHICH THINS products sold throughout the last 6 years and counting:

**2014**    **2017**    **2019**    **2020**

  

13. Outer Aisle sells its products to satisfy the demands of any consumers who cannot tolerate traditional bread because they are sensitive to bread's gluten. Others avoid traditional bread because of its high calories, carbohydrates, and glycemic index.

14. Outer Aisle maintains a robust social media presence with a heavy following. It invests substantial resources to develop and create animated advertising campaigns on Instagram and other social media sites, which are viewed by its customers, potential customers, and fans.

15. Consumers using Outer Aisle's SANDWICH THINS can use them to make thin sandwiches using one or two thins. They can also use the thin slices for toast and similar open-faced sandwiches.

16. Since it launched 2013, Outer Aisle became the fastest growing food brand in the United States, achieving a three-year growth rate of more than 5,000 percent.

17. In 2020, Outer Aisle was recognized as the No. 5 fastest growing company in California.

18. Outer Aisle received awards and honors and is constantly featured in the worldwide press.

19. Born out of founder Jeanne David's personal journey to remove sugar and processed carbs from her family's diet, Outer Aisle now shares its healthy food innovations with the public and endeavors to make healthier and bountiful food options available to all.

### BIMBO

20. The defendants are known for selling bread.

21. Outer Aisle sells no bread.

22. Defendant Bimbo is famously associated with its BIMBO plain white bread loaves that have stocked up the bread aisles in general convenience stores since the mid-90's:

23. Over the years, Bimbo Bakeries USA acquired almost all of America's bread-makers, including without limitation Arnold, Brownberry, Sara Lee, Thomas, and Oroweat Bread. Defendant Arnold owns trademark registration No. 3,637,950 (the "Registration") for the mark SANDWICH THINS, which was registered in 2009. The only goods named in the Registration are "bread." To obtain the registration, the application had to disclaim the term "sandwich" because the Patent and Trademark office ruled the "wording is descriptive because the applicant's bread is used to make SANDWICHES."

24. Many other companies use "sandwich thins" and "thins" to describe their thin, sandwich bread.

25. Defendants' SANDWICH THINS bread is sold on shelves in the bread aisle.

26. Outer Aisle sells its SANDWHICH THINS products in the refrigerated section of grocery stores, known as the "outer aisles," because Outer Aisle's Sandwich Thins are made of fresh cauliflower, and absolutely no filler flours, preservatives, or artificial ingredients.

27. Defendants and Outer Aisle have concurrently sold products that include the phrase "sandwich thins" for over six years with no consumer confusion or other conflict.

28. The first contact Outer Aisle ever had with Bimbo occurred in September 2018 when Bimbo's attorney wrote Outer Aisle, after Outer Aisle applied to register the mark CAULI THINS ("THINS"). Bimbo requested that Outer Aisle remove reference to "bread" in its THINS application. As a courtesy, Outer Aisle edited the ID in its THINS application to remove bread but kept the remaining description of its vegetable-based food product intact. Other than making this small edit to its pending THINS application, Outer Aisle continued to grow and expand its business, and BIMBO continued its long history of acquiescence to Outer Aisle's use of SANDWHICH THINS.

29. Defendants' acquiescence for over six years prejudiced Outer Aisle because Outer Aisle substantially expanded its SANDWICH THINS business during their delay.

30. Defendants' acquiescence for over six years is presumed to be and is laches preventing Defendants from enforcing its alleged trademark rights in the SANDWICH THINS mark.

31. Defendants' failure to police its SANDWICH THINS mark caused the public to understand "sandwich thins" is generic for thinly sliced sandwich bread.

32. Defendants' failure to police its SANDWICH THINS mark caused them to abandon their alleged trademark rights.

33. After its 2018 contact, Outer Aisle did not hear from the defendants again until two years later, in April 2020. In April 2020, Bimbo's attorney wrote Outer

Aisle's attorney demanding Outer Aisle "cease all use of SANDWICH THINS." Outer Aisle did not cease its use, and it continued to grow its SANDWICH THINS product lines, and it continued to grow in national reputation, earning several awards at this point.

34. Bimbo's attorney wrote again 7 months later, in November 2020, with another passionless boilerplate repeat of the demands made in its other letter. Outer Aisle continued using SANDWICH THINS.

35. For five more months, Defendants took no action.

36. Outer Aisle continues using SANDWICH THINS to promote, sell, and describe its award-winning Cauliflower food products. Outer Aisle's SANDWICH THINS continue to grow in national media attention, and likewise their online presence, reputation, popularity, and goodwill on sites like Amazon continues to grow. Outer Aisle's SANDWHICH THINS products have grown to be a top-two seller in its category on Amazon.

37. On March 15, 2021, Defendants submitted several complaints to Amazon alleging Outer Aisle's product listings were infringing their trademark, which resulted in Amazon removing Outer Aisle's SANDWHICH THINS products from its website. Outer Aisle submitted appeals to Amazon to reinstate the listings, but as of the date of this complaint, Amazon has only reinstated one of the listings removed by defendants. Since March 15, 2020, Outer Aisle's attorneys wrote to defendants' attorneys twice, requesting they immediately withdraw the Amazon complaints and submitting legal arguments associated therewith, but defendants' counsel responded both times that their client would not retract their Amazon infringement complaints.

38. Amazon.com has a partially automated system that allows trademark owners to submit online takedown requests for Amazon listings they allege infringe their trademark rights. Amazon's system relies on the veracity of the complainer's submis-

sion and quickly deactivates accused listings. This process is conducted in secret except that Amazon notifies the listing's owner about the deactivation and provides the listing's owner with the email address of who submitted the takedown request.

39. Every day that the subject Amazon listings remain deactivated, Outer Aisle is suffering quantifiable lost sales of at least 10-20k per day. Defendants intentionally utilized Amazon's automated take-down process to remain out of the public's eye, inflict immediate damage to Outer Aisle and hold the deactivated listings hostage from Outer Aisle. The defendants extort Outer Aisle by refusing to release Outer Aisle's valuable listings unless and until Outer Aisle agrees to completely shuts down its SANDWHICH THINS business.

40. Defendants have negligently misrepresented facts to Amazon, including but not limited to failing to represent that: (1) there is no trademark infringement; (2) there is no consumer confusion; (3) sandwich thins is not protectible under trademark law; (4) defendants do not have enforceable trademark rights to the phrase sandwich thins; (5) defendants' claims against Outer Aisle are time-barred; (6) Outer Aisle's products do not compete with Defendants' products; (7) Outer Aisle does not make bread; and (8) Outer Aisle has senior rights to use the phrase Sandwich Thins in connection with cauliflower food products and bread substitutes.

41. Defendants are intentionally preventing thousands of dollars in sales whilst Outer Aisle's products remain delisted by Amazon's system at their continued and unrelenting request.

42. By sending baseless takedown notices to Amazon, Defendants intentionally disrupted Outer Aisle's established, economic business relationship with Amazon.

43. By sending baseless takedown notices to Amazon, which caused Outer Aisle's top selling Amazon listings to be abruptly yanked from Amazon.com and indefinity suspended, Defendants are causing business reputational and economic harm

to Outer Aisle. Defendants were aware of Outer Aisle's business expectancies with its ecommerce partners, customers, and prospective customers.

44. Defendants threaten to, and unless restrained will disrupt further business with e-commerce partners, existing and potential customers and distributors of Outer Aisle's products, and/or will further interfere with other existing and potential customers and distributors of Outer Aisle's products, for which damages would not afford adequate relief, in that they would not completely compensate Outer Aisle for the injury to Outer Aisle's business reputation and goodwill.

45. Defendants knowingly made these material misrepresentations and continued to maintain false and baseless claims of infringement. Even if Defendants' SANDWICH THINS is not deemed generic for thin sandwich bread, there is no basis to allege Outer Aisle of Infringement. The party's respective products are not the same, and they are not sold together. Defendants' bread is sold in the bread aisle, but Outer Aisle's is in the refrigerated case. The marks are similar, but during the many years of simultaneous use of the parties' marks, no actual confusion occurred. The marketing channels differ because Defendants sell traditional flour-based bread products to a mass market, but Outer Aisle sells vegetarian food through gourmet and health food markets. Outer Aisle's customer exercise high consumer care because they are serious about avoiding bread and eating healthy food for health-conscious reasons. Outer Aisle's consumers highly scrutinize product ingredients. Outer Aisle does not compete with the defendants and chose SANDWICH THINS because it is generic for a thin, bread-like product that customers could use for making sandwiches. Outer Aisle does not intend to expand into bread, and Defendants are unlikely to sell products that are not bread, pastry, or grain-based product.

46. By allowing Outer Aisle and third parties to use "sandwich thins," as trademarks for their products, defendants abandoned the Registered trademark and any other rights in "sandwich thins."

47. On information and belief, using "sandwich thins" by many third parties caused that term to become generic for thin-sliced bread.

48. By allowing Outer Aisle and third parties to use "sandwich thins," as trademarks for their products, defendants abandoned the Registered trademark and any other rights in "sandwich thins."

49. On information and belief, using "sandwich thins" by many third parties caused that term to become generic for thin-sliced bread.

50. By allowing Outer Aisle and third parties to use trademarks for "sandwich thins," Defendants abandoned the Registered trademark and any other rights in "sandwich thins."

51. Defendants' almost six-year delay in enforcing any trademark rights in "sandwich thins" exceeds the four-year statute of limitations under Cal. Civ. Proc. Code § 338(d), which federal courts in California use to calculate the laches period for trademark infringement.

52. Outer Aisle has been prejudiced by Defendants' delay.

53. Defendants' laches bars them from obtaining monetary and injunctive relief.

54. Defendants know or should know they abandoned their Registration.

55. By initiating the Amazon.com takedowns knowing Outer Aisle does not infringe, Defendants' SANDWICH THINS is generic for thin sandwich bread and Defendants' claim is barred by laches, its acts are unfair competition under 15 U.S.C. § 1125(a).

### SECOND CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF TRADEMARK NON-INFRINGEMENT AND INVALIDITY

56. Outer Aisle repeats the allegations of the previous paragraphs.

57. This is a claim for declaratory judgment to declare Outer Aisle's use of "sandwich thins" for its goods does not infringe the Registration or other rights Defendants claim to have in "sandwich thins."

58. This Court has subject matter jurisdiction under this claim under 28 U.S.C. §§ 1338(a) and 2201.

59. The parties dispute whether Outer Aisle's use of any mark or descriptive phrase that includes "sandwich thins" infringes any rights Defendants have in the Registration or other rights in "sandwich thins."

60. The parties also dispute whether the Registration is valid or whether Defendants have exclusive rights to "sandwich thins."

61. Outer Aisle claims it does not infringe Defendants' SANDWICH THINS mark, the mark is generic for thin sandwich bread, and that the Defendants' claim of infringement is barred by laches.

62. Defendants' claim that that Outer Aisle infringes its trademark rights "sandwich thins."

63. Defendants' submission of several complaints to Amazon.com to remove Outer Aisle's sales listings because of trademark infringement creates a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

### THIRD CLAIM FOR RELIEF – CANCELLATION OF ARNOLD'S TRADEMARK REGISTRATION NO. 3,637,950 FOR THE MARK SANDWICH THINS

64. Outer Aisle repeats the allegations of the previous paragraphs.

65. This is a claim for the Court to cancel Arnold's Trademark Registration - No. 3,637,950 for SANDWICH THINS.

66. This Court has subject matter jurisdiction under this claim under 28 U.S.C § 1338(a).

67. The Court has the power under 15 U.S.C. § 1119 to cancel the Registration.

68. The Registration is subject to cancellation because the mark has become generic for thinly sliced bread.

69. The public uses "sandwich thins" as a generic name for thin pieces of bread.

70. The Defendants lack protectible ownership rights in the phrase "sandwich thins" because it is generic.

71. The Defendants lack protectible ownership rights in the phrase "sandwich thins" because the public primarily understands that mark as describing 'what' the good is.

72. Besides genericness, the "sandwich thins" mark is functional, which also subjects it to cancellation. The mark "sandwich thins" signals a filling or topping on or between thin slices of bread.

73. The Registration is also subject to cancellation because third parties use "sandwich thins" as a trademark or descriptively, and Defendants took no action to stop those third parties from continuing to use "sandwich thins."

74. Based on the foregoing, the Court's cancellation of the Registration is proper.

## REQUEST FOR RELIEF

Plaintiff Outer Aisle requests:

1. Judgment be entered in favor of Outer Aisle and against all Defendants.
2. Damages for unfair competition under 15 U.S.C. § 1125(a) be awarded in an amount to be proved.
3. That Defendants, their agents, servants, employees, and all others in privity or acting in concert with them be ordered to immediately withdraw the takedown notices sent to Amazon and be enjoined and restrained from issuing any takedown notices to Outer Aisle's e-commerce partners alleging infringement of Defendants' purported trademark rights in the term "sandwich thins."

4. That Defendants, their agents, servants, employees, and all others in privity or acting in concert with them be permanently enjoined and restrained from issuing any notices to Outer Aisle's distributors alleging infringement of Defendants' purported trademark rights in the term "sandwich thins."

5. Cancelling Arnold's Trademark Registration No. 3,637,950 for SANDWICH THINS on the grounds the trademark is generic.

6. Cancelling Arnold's Trademark Registration No. 3,637,950 for SANDWICH THINS on the grounds the trademark is functional.

7. Cancelling Arnold's Trademark Registration No. 3,637,950 for SANDWICH THINS on the grounds the trademark has been abandoned.

8. Ordering that defendants trademark infringement claims against Outer Aisle are barred by laches.

9. Granting a declaratory judgment that Outer Aisle does not infringe the Registered trademark or any other rights of Defendants alleged rights in and to the phrase "sandwich thins."

10. Declaring the Registration and right in and to the phrase "sandwich thins" invalid.

11. Ordering Defendants to cancel the Registration.

12. Ordering the Patent and Trademark Office to cancel the Registration.

13. Holding this case is exceptional and awarding Outer Aisle reasonable attorney fees.

14. Awarding Outer Aisle its costs.

15. Awarding Outer Aisle any other relief to which it is entitled.

March 25, 2021

/s/ Marina Lang
Marina Lang
SOCAL IP LAW GROUP LLP

Attorney for Plaintiff Outer Aisle Gourmet LLC

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable to a jury.

March 25, 2021

/s/ Marina Lang
Marina Lang
SOCAL IP LAW GROUP LLP

Attorney for Plaintiff Outer Aisle Gourmet LLC